UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INTERNATIONAL ENVIRONMENTAL   )
MANAGEMENT, INC.,             )
          Plaintiff           )
                              )
                              )
          v.                  )   Civil Action No. 09-30025-MAP
                              )
                              )
ENVIROTRON, LTD. d/b/a        )
CHAINSTAR USA, ET AL.,        )
          Defendants          )


REPORT AND RECOMMENDATION REGARDING THIRD-PARTY DEFENDANT
JAMES H. FITZGERALD'S MOTION TO DISMISS and DEFENDANT ANN TAYLOR,
INC.'S MOTION TO AMEND CROSS CLAIM AND THIRD-PARTY COMPLAINT
(Document Nos. 27 and 43)
April 13, 2010

NEIMAN, U.S.M.J.

Plaintiff, International Environmental Management, Inc. ("IEM"), is a waste-removal company that provided services to Defendant Ann Taylor, Inc. ("Ann Taylor") at numerous locations nationwide. According to IEM's Second Amended Complaint, Ann Taylor is delinquent in payment for these services in an amount of at least $789,357. This alleged delinquency arose in whole or in part because Ann Taylor's agent, Defendant Envirotron, Ltd. d/b/a Chainstar USA ("Chainstar"), allegedly converted funds intended to pay IEM for Chainstar's own use.

IEM has sued both Ann Taylor and Chainstar under a variety of theories and Ann Taylor, as part of its Answer, has brought a Cross Claim and Third-Party Complaint against Chainstar and its president, James H. Fitzgerald ("Fitzgerald"). (The Cross Claim targets Chainstar, while the Third-Party Complaint targets Fitzgerald.) In August

of 2009, Chainstar filed a motion to dismiss the Second Amended Complaint which District Judge Michael A. Ponsor denied, in all respects, on November 16, 2009.

Meanwhile, Fitzgerald had moved to dismiss Ann Taylor's Third-Party Complaint portion of the Cross Claim/Third-Party Complaint. Then, on November 20, 2009, Ann Taylor filed an opposition to Fitzgerald's motion to dismiss. Judge Ponsor thereafter referred that motion to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

In the interim, on December 31, 2009, Ann Taylor filed a motion for leave to amend its Cross Claim/Third-Party Complaint against Chainstar and Fitzgerald. In addition, Ann Taylor's motion seeks to assert three Counterclaims against IEM. On January 14, 2010, IEM filed an opposition to the "Counterclaims" portion of Ann Taylor's motion to amend and then Fitzgerald, on February 11, 2010, filed his own *pro se* opposition to the "Third-Party Complaint" portion of the motion.[1]

The court heard oral argument on the two pending motions -- Fitzgerald's motion to dismiss and Ann Taylor's motion to amend -- on February 24, 2010. At that time, IEM and Ann Taylor jointly indicated that they were on the verge of settling all claims between them. Accordingly, they asked the court to withhold ruling on the "Counterclaims" portion of the motion to amend. Chainstar, for its part, has not opposed the motion to amend, did not even appear at the motion hearing and, as indicated *supra*

---

[1] On January 6, 2010, this court allowed Fitzgerald's former attorneys, who were then representing both him and Chainstar, to withdraw after successor counsel entered an appearance on Chainstar's behalf. Successor counsel has since withdrawn and Chainstar has recently been defaulted. The upshot of these rulings is that Fitzgerald himself has been left to proceed *pro se*, even though his former attorneys had previously filed the motion to dismiss on his behalf.

at n.1, was recently defaulted. As a result, oral argument proceeded only on the "Cross Claim" and "Third-Party Complaint" portions of the motion to amend as well as on Fitzgerald's motion to dismiss. For the reasons that follow, the court will recommend that both outstanding portions of Ann Taylor's motion to amend be allowed and that Fitzgerald's motion to dismiss be denied.[2]

## I. BACKGROUND

In brief, Ann Taylor's original Cross Claim/Third-Party Complaint against Chainstar and Fitzgerald alleges that in or around 2003 Ann Taylor hired Chainstar to manage its accounts payable to third-party waste haulers and to distribute funds that Ann Taylor advanced to Chainstar for the purpose of paying such waste haulers, and that Ann Taylor executed two contracts with Chainstar memorializing this service arrangement. (Cross Cl./Third-Party Compl. ¶¶ 6, 7, 9, 12.) Ann Taylor further alleges that Fitzgerald, Chainstar's president, was its primary representative in these dealings. (*Id.* ¶¶ 3, 15.) In addition, Ann Taylor alleges that it advanced in excess of $630,000 to Chainstar for payment to IEM, but that Fitzgerald purportedly directed Chainstar to fraudulently accept and retain those funds. (*Id.* ¶¶ 22, 23, 27, 53, 68.)

Ann Taylor's Cross Claim/Third-Party Complaint contains the following seven causes of action, four of which are asserted against Fitzgerald (in addition to Chainstar):

    Count I: Breach of Contract (against Chainstar only);

    Count II: Breach of Fiduciary Duty (against Chainstar only);

---

[2] Even though the court is authorized to "hear and determine" the motion to amend, *see* 28 U.S.C. § 636(b)(1)(A), since that motion is intertwined with Fitzgerald's motion to dismiss, the court has decided to consider both motions via this report and recommendation.

>Count III: Conversion (against Chainstar and Fitzgerald);
>
>Count IV: Indemnification (against Chainstar only);
>
>Count V: Money Had and Received/Unjust Enrichment (against Chainstar and Fitzgerald);
>
>Count VI: Account Stated (against Chainstar and Fitzgerald); and
>
>Count VII: Fraud (against Chainstar and Fitzgerald).

Fitzgerald's motion seeks to dismiss the four counts targeting him: Counts III, V, VI and VII. (*Id.* ¶¶ 31-84.)

Should the Cross Claim and Third-Party Complaint portions of its motion to amend be allowed, however, Ann Taylor's pleading will maintain the above seven counts, but target Fitzgerald in *all* of them; thus, he will also be named in Counts I, II and IV. To get there, the proposed amendment adds new factual allegations that Fitzgerald is Chainstar's "alter ego," one of the main topics at issue in Ann Taylor's opposition to Fitzgerald's motion to dismiss.

## II. DISCUSSION

In the court's view, it makes analytical sense to first discuss Ann Taylor's motion to amend, insofar as it seeks to add new factual allegations and claims against Fitzgerald and Chainstar. The court's recommendation will be to allow that part of the motion to amend. Turning then to Fitzgerald's motion, the court will recommend that there are insufficient grounds to dismiss Counts III, V, VI and VII. Should these recommendations be adopted, therefore, Fitzgerald will face all causes of action (Counts I through VII) contained in Ann Taylor's Cross Claim.

A. Ann Taylor's Motion to Amend the Cross Claim/Third-Party Complaint

In the court's estimation, Ann Taylor's motion to amend the Cross Claim and Third-Party Complaint portions of its pleading can be dealt with in short order. In sum, Fitzgerald's *pro se* opposition fails to adequately address any of the reasons Ann Taylor advances as to why the amendment should be allowed.

Subsection (2) of Fed. R. Civ. P. 15(a) provides that leave to amend a pleading "shall be freely give[n] . . . when justice so requires." "This phrase is usually interpreted as an affirmation of the liberal approach to pleading . . . and as an encouragement to district judges to decide a plaintiff's claims on the merits whenever possible." *McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals*, 168 F.R.D. 94, 97 (D. Mass. 1995) (citing, *inter alia*, *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *See also Espinosa v. Sisters of Providence Health Sys.*, 227 F.R.D. 24, 26 (D. Mass. 2005) ("[T]he liberal amendment policy of Rule 15(a) is a mandate to be heeded."). At bottom, "Rule 15(a) requires that leave to amend be given freely in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive, or undue prejudice to the opposing party." *Chiara v. Dizoglio*, 59 F. Supp. 2d 193, 198 (D. Mass. 1999).

Here, there is no evidence of undue delay, bad faith, or dilatory motive. Indeed, the proposed amendment was filed shortly after a limited deposition of Fitzgerald (allowed by the court) and the failure of the case to settle at a mediation on December 15, 2009. Nor is there any compelling argument by Fitzgerald of undue prejudice or futility. To be sure, Fitzgerald makes the conclusory assertion that the new facts against him -- which essentially allege he is the "alter ego" of Chainstar and that the court should "pierce its corporate veil" -- will "prejudice" him personally. However, the mere fact that Fitzgerald does not like the new allegations does not qualify as "undue

prejudice" such that the motion to amend should be denied. *See* 61A *Am.Jur. Pleading* § 775 (2009) (an opposing party's "mere statement that it will be prejudiced if the amendment is allowed is not a sufficient reason for denying leave to amend") (citing *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484-85 (6th Cir. 1973)). Accordingly, in the court's view, Ann Taylor should be entitled to pursue its newly-pled theories, which in any event it has raised in opposition to Fitzgerald's motion to dismiss, at least through the remainder of discovery. As a result, the court recommends that Ann Taylor's motion to amend the Cross Claim and Third-Party Complaint be allowed.

B. Fitzgerald's Motion to Dismiss

Arguably, allowance of Ann Taylor's motion to amend the Cross Claim/Third-Party Complaint will moot Fitzgerald's motion to dismiss that pleading. Nonetheless, and if for no other reason than to ward off another motion to dismiss and move this case along, the court will discuss the motion to dismiss in some detail, concluding, in the court's estimation, that it should be denied.

When he filed the motion, Fitzgerald was represented by counsel (see n.1) who, on his behalf, pursued two legal theories of dismissal: (1) that this court lacks personal jurisdiction over him, *see* Fed. R. Civ. P. 12(b)(2); and (2) that the original claims asserted against him (Counts III, V, VI and VII) fail to state claims upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6). The court will discuss, and reject, each theory in turn.

1. Personal Jurisdiction

Based on a short affidavit, Fitzgerald argues, among other things, that he is a citizen of New York who has never resided, rented or owned property, or maintained an

office in Massachusetts, engaged in any persistent course of conduct here, or regularly conducted or solicited business in Massachusetts. Accordingly, Fitzgerald contends, the court lacks personal jurisdiction over him based on both the Commonwealth's long-arm statute and the Due Process Clause of the United States Constitution. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995) (noting that both requirements must be satisfied). *See also Hannon v. Beard*, 524 F.3d 275, 280 (1st Cir. 2008) ("[W]e have construed the Massachusetts long-arm statute to be coextensive with the limits allowed by the United States Constitution."). The problem with Fitzgerald's argument, however, is the multiple facts alleged by Ann Taylor and unrebutted by him, namely, that he is Chainstar's "alter ego" and/or acted significantly "on behalf of" the corporation such that the court must "pierce the corporate veil" and attribute Chainstar's numerous forum contacts to him. *See Hannon*, 524 F.3d at 279 (noting that the court may consider certain materials extrinsic to the pleadings in evaluating a motion to dismiss based on personal jurisdiction grounds).

Before turning to the "veil piercing" analysis, however, the court notes that there can be no dispute that personal jurisdiction exists over *Chainstar*. For one thing, by answering Ann Taylor's Cross Claim without asserting any personal jurisdiction defense and by not raising such a defense in its motion to dismiss IEM's Second Amended Complaint, Chainstar has waived such a defense. *See* Fed. R. Civ. P. 12(b)(2) and (h)(1)(B). In addition, neither Fitzgerald nor anyone else has argued that the three-part due process inquiry for determining personal jurisdiction over Chainstar is lacking. Hence, there is agreement that: (1) the claims "directly arise out of, or relate to, [Chainstar]'s forum-state activities"; (2) Chainstar's in-state contacts "represent a

purposeful availment of the privilege of conducting activities in the forum state"; and (3) "the exercise of jurisdiction [over Chainstar would] be reasonable," *Sawtelle*, 70 F.3d at 1389 (citations omitted).

The court now turns to the legal question of veil piercing. Under New York law, which both parties contend applies here, courts have pierced a company's corporate veil where the company (1) "had no board of directors, shareholders or corporate officers other than [the defendant]," (2) "held no corporate meetings [and] kept no corporate records," and (3) paid for the defendant's personal expenses. *Austin Powder Co. v. McCullough*, 628 N.Y.S.2d 855, 855-57 (App. Div. 3d Dep't 1995). *See also Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993) ("Generally, . . . piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.") (citing cases); *Pae v. Chul Yoon*, 838 N.Y.S.2d 172, 174 (App. Div. 2d Dep't 2007) (citing defendant's sole ownership of company and intermingling of corporate and personal funds as justification for veil piercing); *Rohmer Assocs., Inc. v. Rohmer*, 830 N.Y.S.2d 356, 358 (App. Div. 3d Dep't 2007) (same). The analysis under Massachusetts law does not differ materially. *See, e.g.*, *My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E.2d 748, 751-52 (Mass. 1968) (noting that the circumstances regarding veil-piercing "have been frequently discussed" and are particularly applicable "(a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious

consequence . . . or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities").

Applying the law to the facts here is quite easy. Ann Taylor has alleged, without dispute and with direct support from admissions made by Fitzgerald at his deposition, the following: that Fitzgerald was Chainstar's sole founder in 1995 and has been its sole owner since that time; that Fitzgerald has been Chainstar's only officer throughout its existence; that Chainstar has never had a board of directors, held corporate meetings, or drafted by-laws; that Fitzgerald signs all of Chainstar's checks and is the only person with signatory authority on Chainstar's primary bank account; and that Fitzgerald has been responsible for all of Chainstar's decisions since at least January of 2005.

Ann Taylor has also alleged, again with deposition support and no dispute from Fitzgerald: that Chainstar, at Fitzgerald's direction, paid for approximately $850,000 of Fitzgerald's personal expenses -- as "shareholder loans" -- since the early part of the last decade without any interest, promissory notes or other documentation of the loans' terms; that Fitzgerald personally directed his subordinates at Chainstar to withhold payments that were due to IEM at least until IEM demanded them; and that Fitzgerald took approximately $115,000 in "shareholder loans" in 2008 and nearly $50,000 more in 2009 (some during this litigation) for which he himself wrote the checks. Ann Taylor has also alleged that: Fitzgerald knew no later than August of 2008 that Chainstar was unable to pay its bills as they came due and that it owed IEM over $500,000; while Ann Taylor paid Chainstar in full for IEM's services, Chainstar diverted those funds to other

9

uses, including payment of Fitzgerald's salary and "shareholder loans"; Fitzgerald does not believe that he will be able to pay back even $100,000 of his $850,000 loans; and had Fitzgerald not caused Chainstar to loan him hundreds of thousands of dollars, it could have used at least some of those funds to help satisfy its debts to IEM, debts for which Ann Taylor has now been sued.

As Ann Taylor points out, it is well-established that personal jurisdiction over corporate officers may be based on any or all of three corporate theories:

> (1) . . . jurisdiction may be based on their activities as corporate officers, acting on behalf of the corporation, (2) . . . *jurisdiction may be based on their activities by disregarding the corporate form*, or (3) . . . jurisdiction may be based on their activities operating independently of the corporation (*e.g.*, by personally guaranteeing . . . [a corporation's] obligations).

*M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 279 (D. Mass. 2008) (emphasis added) (citing cases). Here, without even getting to theory (1) or (3), there is more than sufficient evidence as to theory (2): that Fitzgerald sufficiently "disregarded the corporate form" such that he is Chainstar's "alter ego" for personal jurisdiction purposes. Indeed, nowhere in his motion to dismiss papers does Fitzgerald suggest, let alone argue, that the corporate veil of Chainstar ought *not* be pierced; and, at oral argument, he simply "rested on his papers." Finally, even in his *pro se* opposition to the motion to amend, Fitzgerald makes several concessions that go directly to the alter ego issue, *e.g.*, "I will concede that I have had complete domination of . . . Chainstar" and "I simply borrowed corporate funds with the intention of ultimately paying them back." (Document No. 49 ¶¶ 4, 5.) Accordingly, there can be no dispute, in the court's opinion, that Fitzgerald, as the alter ego of Chainstar, is subject to the personal jurisdiction of

this court.

    2. Merits

Addressing the merits, Fitzgerald next asserts that Counts III, V, VI and VII fail to state claims upon which can be granted for, respectively, conversion (Count III), money had and received/unjust enrichment (Count V), account stated (Count VI), and fraud (Count VII). The court disagrees.

For one thing, assuming the Cross Claim/Third-Party Complaint is amended, many new facts have been pled which bolster Counts III, V, VI and VII. Most notably, the amendments make numerous allegations (described above in the personal jurisdiction portion of the motion to dismiss) that Fitzgerald acted on behalf of or in concert with Chainstar and, indeed, is its alter ego.

Even as originally pled, however, the court believes that these four counts adequately state claims upon which relief can be granted. The court will address each cause of action in turn, mindful that "[t]o survive a motion to dismiss, the complaint must allege a plausible entitlement to relief" as to each claim. *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 49 (1st Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009)) (further citations and internal quotation marks omitted).

    a. *Conversion (Count III)*

With regard to the conversion claim, Fitzgerald asserts that a corporate officer cannot be held liable for the tortious conduct of a corporation unless there is a "showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury." *Rhone v. Energy North, Inc.*, 790 F. Supp. 353, 362 (D. Mass. 1991). Ann Taylor's original Cross Claim/Third-Party Complaint plausibly

makes numerous allegations in this regard.

For example, Count III specifically alleges that Fitzgerald: was "aware" that "AnnTaylor delivered more than $2.5 million to Chainstar with the specific intention that Chainstar would distribute those funds in appropriate amounts to third-party waste-haulers"; that "Fitzgerald unlawfully converted more than $630,000 of the funds . . . by using those funds to pay [his] creditors, employees and/or shareholders"; that, in doing so, "Fitzgerald wrongfully retained and exercised dominion and control over the converted funds in violation of AnnTaylor's title and right to possess them . . . [and] without AnnTaylor's knowledge or permission"; and that "Fitzgerald [has] failed and refused to pay any portion of the converted funds to IEM or return and portion of the converted funds to AnnTaylor." (Cross Cl.,Third-Party Compl. ¶¶ 51, 53, 54, 56.) In the court's view, these allegations are more than sufficient for Count III to survive Rule 12(b)(6) dismissal.

b. *Money Had and Received/Unjust Enrichment (Count V)*

Regarding the unjust enrichment claim, Fitzgerald's argument is essentially that recovery under that theory is appropriate only where a contract "is too indefinite to be enforced or where no contract is made because each of the parties had a material different understanding of the terms." *Jasty v. Wright Med. Tech., Inc.*, 2006 WL 961456, at *22 (D. Mass. Apr. 5, 2006) (citations and internal quotation marks omitted). According to Fitzgerald, Count V is "duplicative" of Count I, the breach of contract claim against Chainstar, and that "[w]here a contract does govern the parties' relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies.' *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 182 (D. Mass.

2003).

In the court's estimation, this argument is unavailing. As Judge Ponsor stated in his November 16, 2009 Memorandum and Order denying Chainstar's motion to dismiss IEM's Second Amended Complaint, "[a]t this stage of the litigation, alternative pleading is entirely permissible." (Mem. & Order at 4-5 (citing, *inter alia*, Fed. R. Civ. P. 8(a)(3) and (d)(3).) In other words, there is no reason why Ann Taylor ought not be allowed to plead a breach of contract claim in Count I and then an unjust enrichment claim in Count V.

      c. *Account Stated (Count VI)*

In seeking to dismiss the account stated claim, Fitzgerald argues that it is based on Chainstar's contract with Ann Taylor and, since he was not a party to that contract, he cannot be sued with respect thereto unless he acted with actual malice. *See, e.g.*, *Shutzer v. S. Rothschild & Co.*, 2006 WL 2691692 (D. Mass. Sep. 19, 2006) (citation omitted). To be sure, Ann Taylor's proffered amendment now specifically alleges that Fitzgerald, as Chainstar's alter ego, was a party to the contract. Regardless, the original complaint, Fitzgerald's argument notwithstanding, asserts that "Fitzgerald acted knowingly, intentionally, willfully, and maliciously, or at least with reckless indifference to the rights and interests of AnnTaylor that rose to the level of willful and wanton conduct." (Cross Cl./Third-Party Compl. ¶ 55 (incorporated into Count VI via ¶ 67).) Accordingly, Fitzgerald's motion with respect to Count VI is also unavailing.

      d. *Fraud (Count VII)*

Finally, as to the fraud claim, Fitzgerald's argument relies heavily on the so-called "heightened pleading" requirements of Fed. R. Civ. P. 9(b), *i.e.*, that Ann Taylor

must allege that he (1) made a false representation of material fact (2) with knowledge of its falsity (3) for the purpose of inducing Ann Taylor to act thereon, and (4) that it relied upon that statement to its detriment. *20 Atl. Ave. Corp. v. Allied Waste Indus., Inc.,* 482 F. Supp. 2d 60, 78 (D. Mass. 2007). Fitzgerald addresses each element, in turn, asserting that sufficient facts have not been pled with respect thereto.

In the court's view, the complaint more than adequately alleges the elements of fraud with respect to Fitzgerald. For one thing, the allegations of conversion as well as the other causes of action have been specifically incorporated into Ann Taylor's fraud claim. (See Cross Cl./Third-Party Compl. ¶¶ 50-57, 73.) And in the fraud claim itself, Ann Taylor specifically alleges the following: that, during 2007 and 2008, it paid millions of dollars to Fitzgerald for waste removal services, some of which was earmarked to pay IEM; that Fitzgerald personally converted hundreds of thousands of dollars worth of those payments to issues other than what he knew the funds were intended for; that the improper diversion would have been material to Ann Taylor's decision to continue remitting funds to Chainstar; that Fitzgerald never informed Ann Taylor of that material fact; that Fitzgerald was obligated to do so by reason of the fiduciary relationship with Ann Taylor in which he and Chainstar stood; and that Ann Taylor suffered damage as a result of its reliance. (*Id.* ¶¶ 73-84. See also *id.* ¶¶ 16-30.) Ann Taylor also adequately alleges both intent (*id.* ¶ 80) and detrimental reliance (*id.* ¶¶ 81-83). Accordingly, the court believes that Fitzgerald's motion with respect to Count VII should be denied as well.

### III. CONCLUSION

For the reasons stated, the court recommends that the "Cross Claim" and "Third-

Party Complaint" portions of Ann Taylor's motion to amend be ALLOWED and that Fitzgerald's motion to dismiss be DENIED. As noted above, the "Counterclaims" portion of Ann Taylor's motion to amend will remain under advisement. Within fifteen days following Judge Ponsor's ruling on this report and recommendation, IEM and Ann Taylor shall report to this court as to how they wish to proceed with regard to the Counterclaims portion of the motion to amend.[3]

DATED:   April 13, 2010

/s/  Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[3]   The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.